On oral argument, beginning with Arms of Hope v. City of Mansfield, Mr. Brandt. May it please the Court, Tom Brandt for the City of Mansfield. In my limited time before the Court, and without waiving any of the arguments I've made in the briefing, I'd like to focus the Court's attention on three matters. Standing, maps, and overbreadth. First, the issue of standing. It's the most critical issue because it goes to the very heart of the jurisdiction of the Court. The City of Mansfield contends that the Arms of Hope has not made a, quote, clear showing, unquote, that it is likely to establish each of the elements of standing in order to support the injunction that was issued against the City of Mansfield. Before you get to standing, and certainly you're entitled to argue that, and it's jurisdictional and it's important, but why isn't this matter completely moot? Yes, Your Honor. I appreciate that. We have made changes to both ordinances, the permitting ordinance and the zoning ordinance, and we've made those to try to improve our ordinance, make it as reasonable as possible going forward upon reflection. But what has not changed, there's some very critical things that have not changed. One of the things is that it says in the original ordinance and the amended ordinance, which is before the Court, that the operator is the one who is to be getting a permit. Well, let's go back, though, to some—again, I don't mean to interrupt you, and I want you to go through all your train of prepared argument, and that's fine. But this is only an interlocutory appeal from the grant of a preliminary injunction as to the now-superseded ordinance. And that's all we have before us. So it seems to me that because there have been—you can argue about how substantial the changes are, but there have been some substantial changes. It wouldn't just change in a couple of comments or something. So that there's a new ordinance, but there's no—but our appeal is an injunction of the original one. So I don't—it seems to me that it's all mooted. It goes back to the district court to consider what I'll call the new ordinance. I appreciate that, Your Honor. Let me jump to the third argument that I was wanting to talk about because I think it addresses what you're talking about. Okay. Over breadth. All right. So—and I will file a 28-J letter on this because I just became aware of this Supreme Court decision, Labrador v. Poe through Poe. That was where the United States Supreme Court stayed an injunction at the Supreme Court level. It had to do with an Idaho statute that was regulating transgender treatments. The plaintiffs, Poe, in that case, were seeking an injunction against the medical treatment, the hormone therapy. They wanted to have hormone therapy and the Idaho statute said you can't have hormone therapy. They were not seeking surgical procedures to change anatomy, and yet the injunction of the district court was to enjoin everything in the statute. The treatment that they were seeking and the surgeries that they were not seeking. Here we have a similar situation. We have an ordinance that has been modified, but it retains portions that have been enjoined that were never asked to be enjoined and that haven't changed. For example, the maintenance provisions where you're supposed to keep your donation bin clean and not overflowing with refuse. Those were not challenged by arms of hope, and yet they were enjoined. There was a kind of a—just a blunderbuss approach that the district court took to saying both ordinances are entirely stricken or entirely enjoined. I'm sorry. What do you mean both ordinances? There's—the donation bin laws are comprised of two ordinances. Permitting. Both ordinances are enjoined in their entirety. The court enjoined the entirety of the now superseded ordinance. Yes, but the effect— the practical effect is even though we've changed some portions and have perhaps mooted some issues that the district court was concerned with, there are—we are still living under, reasonably speaking, we're living under the injunction as to those provisions that we have not changed. One of the provisions that we have not changed is the operator. Who gets a permit? And going back to the original reasoning for this— among the reasons for the need for this ordinance or these two ordinances was that donation bins were being dropped and property owners were not knowing who's been— who was operating this, who was responsible for this bin, how we're going to take enforcement acts against it. So the city, among other things, put together a permitting scheme that said, okay, you're going to have to— if you're the operator, you're going to have to get a permit. And that way we know who you are and that way we know who to take enforcement action against. That goes to the very heart. That is the same under both ordinances. And it also goes back to the standing argument, and that is if it hasn't changed, it has to be an operator, then the only person who has standing or the only entity that has standing to bring a challenge to the ordinance would be an operator. Now, as I submitted a 28-J letter yesterday that had to do with the Murthy decision, in that case, the Supreme Court said there was a lack of standing at the Supreme Court level. It's for the first time they bring it up. The entire case was— said, no, there's no standing for the plaintiffs to bring it. That was where the quote that I brought to you came from, that at the preliminary injunction stage, the plaintiff must make a, quote, clear showing that she is, quote, likely to establish each element of standing. That's why I'm harping on this operator issue, because we have in the record— and again, another thing that Labrador says is that these injunctions are fast and furious businesses. We don't have a lot of time to look at everything. We have to hurry, hurry, hurry. So then, after upon reflection, we say, oh, wait a minute, in the record in this case, if you look at record 235 and 236, you see an email from Miss Kristen Green who says, good morning, and she's writing to the city of Mansfield, the person who's—one of the department directors who's in charge of regulation in this matter. And she says, I represent United Donation Clothing Services. Now, wait a minute. Later, they come and say, well, it wasn't United Donation Clothing Services. It should have been United Clothing Donation Services. Whatever. Regardless of the name, she says, I represent United Donation Clothing Services, the donation bin operator for Arms of Hope Charity. So the one who is the operator is either United Donation Clothing Services or United Clothing Donation Services. Whatever. Apparently, the real name is United Clothing Donation Services. Nevertheless, on the record, we have Kristen Green saying that that entity is the operator. Now, I thought that she, Kristen Green, was a lawyer, but I was wrong. Nevertheless, she's making kind of an attorney in fact. She's saying, I represent, on the record, she's saying, I represent the operator. And it's not Arms of Hope, because that is something different. That's represented by Karen Donnelly. But this is talking about who is actually doing the operation, who places it, who maintains it. What we are, and we have tried to get this information, and it's been a bit of opaque and difficult process, which goes back to the original reasoning for the permitting in the first place was to get clarity about who's in charge here. Who's responsible for this bin at this location so we can tell them, hey, you need to clean it up. What we have instead is basically a donation bin with a bumper sticker on it, but it doesn't tell you who's the real operator. So there has been, Arms of Hope has never made an application for a permit under the ordinance, and, well, they should not. And because they're not the operator, it should be another entity. That's why I'm saying they don't have standing. But even if this court says, well, I'm not sure, I think that needs to go down for some development, I understand that, but it clearly, it has to be at this stage a clear showing of a likely, and those are quotes, clear showing, quote, of a, quote, likely, that's directly from the recent Supreme Court decision in Murthy, Murthy v. Missouri. And this was, in Murthy v. Missouri, it was two states were bringing suit. It was not a frivolous kind of a case. It was a very important case, and it had to do with censorship on the Internet or pressure, alleged pressure, on the federal government to censor conservative views. In fact, Robert Kennedy Jr. tried to intervene. The Supreme Court said no, and had he intervened, he might have had standing instead. But that's how serious the Supreme Court takes the standing issue. It's at the heart of the jurisdiction of the court. If I can, in my very limited time remaining, I would like to talk a little bit about maps. And the reason I want to talk about maps is not because I want to persuade you that my map is better than their map, because that's not appropriate. If there had been a finding that our map was not accurate, then I would be here, at best, on a clearly erroneous review of a factual determination by a district court. That's not what I'm here on. I'm here on a district court decision which didn't even make reference to our map, the city's map. Instead, there were two maps. There was one that was provided by Arms of Hope. And it was this red with lines coming out like a big red spider. What later, Arms of Hope admitted, basically, in their briefing, that that big red spider was inaccurate. All of the legs of the spider were outside of the city limits. So that, among other things, indicated that it was an inaccurate map, a sloppy map. But then they put our map, and they put their map side by side in their briefing to show that there were differences, and they were saying that our map was wrong. Okay, I'm not asking you to decide whose map is right or wrong. What I am asking you to do is to reverse and remand on that issue for a hearing. We did not have an evidentiary hearing. And so that was going to be my next question, and this kind of comes back to the mootness issue. But specifically, what relief are you asking for, understanding, and I'm sure you do, that our jurisdiction is limited to an interlocutory, not a final judgment, an interlocutory judgment as to what I keep calling the superseded ordinance? So what is it that we would do as operative language as to the limited thing that we have on appeal? It depends on each one of the three arguments I have. First, on standing, I think that it should be reversed and rendered or, at the very least, reversed and remanded for development. It should be reversed. The junctions should be reversed because they didn't make a clear showing of a likely proof of all the elements of standing. On the map issue, it should be reversed and remanded for factual development, discovery, and an evidentiary hearing to decide what is the actual available locations, not just this ignore the city's map, take the Arms of Hope's map and go with it and make a statement that although 45% of the zones are available for locations, the district court just simply said, but that's just a fraction of the city. Well, the only way you can do that is look at maps and get down into the nitty-gritty of doing that. But as to maps, we would do that as to an ordinance that doesn't exist anymore. It exists, but basically, with regard to the map, what we have done is expanded by eliminating some of the... There's a lot of detail, which I'll have 30 seconds to go into, but there is a lot of nitty-gritty detail that needs to be looked at there, but the general injunction should be removed because we didn't have an evidentiary hearing. Lastly, the overbreath. It should be reversed and rendered on the overbreath because there's no standing to bring an injunction against... If Arms of Hope did not complain about a provision, it never should have been enjoined in the first place. All right, thank you. You saved some time for rebuttal, Mr. Brown. Thank you. Ms. Donnelly? Good morning, and may it please the court. My name is Karen Donnelly, and I represent Appelli Cross Appellant, Arms of Hope. Please start with the mootness question. Yes, Your Honor. This case is not moot for many reasons. First, the city has not cured four of the reasons the district court found the law unconstitutional. The city does not challenge three of those four grounds on appeal. This case, in terms of mootness, is much like Opulent Life Church, which is a Fifth Circuit case, as well as Northeastern Florida Chapter of Association... Sorry, Associate General Contractors v. City of Jacksonville. Ms. Donnelly, are you addressing whether the case is moot or whether this appeal is moot? Both. While the new ordinance may disadvantage Arms of Hope to a lesser degree than the old in some respects, insofar as it makes placement of a donation bin in Mansfield nearly impossible, it disadvantages them in the same fundamental way. All right, but let's get back. Judge Ramirez asked a good question. Focus on whether this appeal is moot. Again, as I said a few minutes ago, understanding that this is an appeal from the injunction of a superseded ordinance. Is this appeal moot? If it is moot, we would dismiss the appeal, but proceedings would be ongoing in the district court as to whether the district court wanted to enter an injunction or have any other relief or have any kind of hearings or factual development. We don't speak to that as to the mootness. It would end this narrow interlocutory appeal. So, speak to that first, and, of course, you can talk about anything else you wish. Sure. I think as an initial matter, what is before this court is the propriety of the preliminary injunction order, whether it was properly granted in this case. I think this court can consider that even though the ordinance has been amended. Opulent Life Church, for example, the eve of oral arguments, that ordinance or law was amended. Didn't the amendments, though, address some of the very grievances that were brought to the district court? Didn't the amendments to the ordinance resolve, in your favor or your client's favor, the grievances you set forth when applying for the injunction? It addressed only two of our six grievances, two of the six findings. So what is left that is covered by this injunction? What is left that you consider to be a grievance with the city? Yes, Your Honor. The amended ordinance continues its zoning restriction, which bans charitable donation boxes in 11 of 20 zones in Mansfield, continues its setback restrictions, which ban donation bins within 500 feet of many major roads, in fact, the most major corridors through the city. It continued its 250-foot setback requirement from parks and recreational facilities. It doesn't define recreational facilities, so we'll have to wonder whether that means CrossFit gyms, swimming pools, rec centers, YMCAs that are scattered throughout commercial areas. It further continues the signage requirements, which are laden with undefined terms, like banning high-intensity colors and requiring only earth-toned or neutral colors. Arms of Hope's bin is a signature blue. Is that high-intensity? Is that not earth-toned? What about the Red Cross? Is that red, not high-intensity, or not earth-toned? And what about Susan G. Komen's signature pink bin? In addition to the signing requirements, the permitting requirements continue. If you look at the permitted use table in the originally challenged 2288 ordinance, permitted use table bans donation bins in a number of zones, as I said, 11, and SP zone is not one of the permitted zones, and Arms of Hope has two bins that are located in the C2 zone with an SP overlay. So that means those bins are either banned by the SP zoning classification or they're required to go through the same dual permitting that we objected to and the district court found officially unconstitutional because it's simply not narrowly tailored to the city's interest in curbing maintenance and aesthetics in this case. So still today, the city imposes numerous layers of restrictions that work together to prevent the public visibility of donation boxes in all of Mansfield, which is the city's illegitimate goal. And Lake Opulent Life Church, which in that case was the eve of oral argument, here, weeks before oral argument, the city amends the law to double down and in 11 of the city's zones, they're completely banned. These donation bins are completely banned. In the remaining nine zones, aside from all of the setback restrictions, the signage restrictions, the permitting requirements, and all of those other issues, in those remaining nine zones, they're now relegated to the rear or side of the lot where no one can see them. The city's goal, the effect of the ordinance reflects the city's intent. The city's goal was clearly to create a prior restraint on charitable donation boxes in the city to hide them from public view. So today I plan to address standing. I've already touched on mootness, the city's untimely motion to compel discovery, and the applicable level of First Amendment scrutiny in this case. The injury, traceability, and redressability elements of standing are easily satisfied in this case. Arms of Hope has established First Amendment injury because the challenge law continues to prohibit the charity's desired speech, chilling Arms of Hope's right to place charitable solicitation through donation boxes. That injury is traceable to the city's donation box law, and the injury is redressable in the request of relief in this case. Under the futility doctrine, the charity need not apply for a license or a permit and be denied prior to filing this pre-enforcement challenge to a law that plainly prohibits its desired speech. In the pre-enforcement context, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing. In Virginia v. American Booksellers Association, the Supreme Court explained, we are not troubled by the pre-enforcement nature of this suit. The state has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. What do you do with Mr. Brandt's argument that only an operator has standing and that these bins don't disclose who the operator is? I hope I'm describing his argument. Oh, absolutely. I plan to address the operator issue, and the bins do, in fact, disclose who the operator is because the charitable message is displayed on the bins, and charity is the operator by definition of the law in this case. So as you pointed out, my friend argues today that standing is lacking because the charity is not the operator, but by the plain definition of donation box. Under the challenge law, Arms of Hope is the operator. The city ignores the part of its law that expressly defines AOH as the operator. Section 155.012 defines donation box as any drop-off box, bin, container, receptacle, trailer, or similar facility that accepts donated textiles, clothing, shoes, books, toys, household items to be used by the operator for distribution, resale, or recycling. As a matter of law, AOH is the operator because it is the entity that uses or sells the donations it receives, that it solicits and receives through these boxes. If the city were to amend its law to try to exclude Arms of Hope from the definition of operator, this charity for the poor would still have standing to bring its First Amendment claims because the message is the charity's. The message restricted in this case is the charity's message. That's Riley and Linkdrop. The Supreme Court made clear in Riley that the involvement of a professional does not alter the fundamental protection of the charity's message under the First Amendment. As this circuit held in NFB-Viabit, donation boxes are not mere collection points for unwanted items, but are rather silent solicitors and advocates for charitable causes. Whether the charity operates the bin or it hires a professional to operate the bin on its behalf, the message is the charity's. The charity has a First Amendment right to communicate that message without undue restriction, and it has standing to defend that right. If we were to determine that the ordinance was content-neutral for First Amendment purposes, is there any pathway for you to prevail? I'm not suggesting that we are inclined to determine that one way or the other. I'm asking you, as a matter of hypothetical, if the ordinance is determined to be content-neutral, where does that leave your argument? Yes, Your Honor. This case requires, in charitable solicitation laws as exhibited here, requires strict scrutiny for three independent reasons. So, assuming for the sake of argument that this court were to, in this hypothetical, find the law content-neutral, if you look at State of Washington v. TVI, that's a good example of a court looking at and following NFB v. Abbott, for that matter, looking at a generally applicable law that restricts charitable solicitations and applying the exacting or strict scrutiny articulated in Riley, Munson, and Schomburg. Because the law, and this is just going straight to Abbott, because the law restricts charitable solicitations, the standard articulated in Riley, Munson, and Schomburg controls. Same standard, same result. In addition, this is a prior restraint. It's a requirement that a speaker obtain a license before engaging in the protected speech activity. And so prior restraints are subject to strict scrutiny. And I think that's one of the errors that we pointed out in this case in that the district court overlooked its prior precedent in Baker v. City of Fort Worth, which found that a prior restraint requiring city review of protected speech was subject to strict scrutiny. And that is under the context of administrative prior restraint. We have two prior restraints at issue in this case, administrative and classic. And classic is a prior restraint that bans protected speech before it is to occur, and that includes partial bans, such as zoning bans, as we have here. And that goes back to CBS, Munson, 90 years of Supreme Court precedent after near v. Minnesota, that clearly states that any restriction on protected speech that bans that speech in advance of its utterance or prevents it from occurring is a prior restraint. It's a before-the-fact prohibition. The Supreme Court has long recognized, or I should say the Supreme Court has long struck down broad prophylactic bans on charitable solicitation, and that is grounded in the prior restraint doctrine. The corollary to the prior restraint doctrine is that the First Amendment allows cities and states, allows governments to punish malfeasance, to punish fraud, to punish failure to timely cure a mess around a donation bin. And punishment has long been preferred to preventing fully protected speech in advance of its utterance. That is the point of the prior restraint doctrine. Riley, Munson, Schomburg, as affirmed in Madigan, all rooted in the prior restraint doctrine. That is the chill of the First Amendment right at issue in this case and the risk of self-censorship. And as Munson so clearly articulated, I'll point to that, it matters not whether the speech is outright banned or prohibited because the speaker cannot comply with the overly burdensome requirement of a license. The chill on the protected activity is the same. And that follows CBS, which states, a before-the-fact prohibition on protected speech is unconstitutional unless the evil that would result from the speech is both great and certain and cannot be militated by less intrusive measures. That is strict scrutiny. And that is the scrutiny that's required for prior restraints and for good reason. I'd like to briefly touch on several items related to standing and the city's purpose in raising this argument for the first time on appeal in that it appears to be more of a meritless plea to reopen discovery in this case, which had already closed. The city waived its discovery objection in the lower court in any motion to compel documents that the charity objected to producing. This is a facial challenge, and the burden is on the city to prove its law is narrowly tailored to a legitimate interest. And the district court correctly found the city has failed to meet its burden. Regarding the scope of the preliminary injunction, I'd like to touch on that briefly. My friend raised today that they object, and this was first raised in their letter brief filed before this court on June 21. They object to the scope of the preliminary injunction. But the city waived that argument. The city admits the decision to grant or deny a preliminary injunction is left to the sound discretion of the trial court, and the city does not allege that the court abused its discretion here or violated any rules of severability. The city's argument is not one of its appeal points and was raised for the first time in that letter brief and therefore is untimely, and that's under Murphy v. Edgefield Holdings. I'd like to turn to the applicable level of scrutiny in this case. The district court correctly granted the preliminary injunction because it found that this law cannot withstand even intermediate scrutiny. The charity showed a likelihood of success on the merits of its claims. Rather than produce evidence as to why its law does not restrict more speech than necessary, the city merely provided a blanket statement that, since the donation box is not an all-out ban on UDBs but merely a set of regulations, it survives intermediate scrutiny. The district court correctly found that explanation insufficient and that the challenge restrictions ban and burden substantially more speech than necessary to achieve the stated interests. Because the deprivation of First Amendment rights for any amount of time constitutes irreparable harm, that constitutional harm outweighs the city's interest in aesthetics, and injunctions protecting First Amendment freedoms are always in the public interest, the district court's order granting preliminary injunctions should be affirmed. But in affirming, we would respectfully request this court to clarify that strict scrutiny is the correct standard of First Amendment review for prior restraints on charitable solicitation. Underneath all of Mansfield's mischaracterizations about its ban and its map, what we have here is still a content-based prior restraint on protected charitable solicitation, eviscerating the First Amendment rights of charities in most of Mansfield. Strict scrutiny applies, as I said, for three independent reasons. I touched on the prior restraint, so I'd like to move to the standard articulated in Abbott, which follows Riley-Munson and Schomburg, and I did touch on that briefly earlier, as the Supreme Court's trilogy applies here, as it did in Abbott, as it did in PlanetAid, as it did in State of Washington v. TBI. The same standard, the same result. This court ruled in Abbott that donation bins placed by or on behalf of charities are charitable solicitations entitled to that stricter scrutiny. The Sixth Circuit agreed, striking down a similar donation ban law that banned donation boxes in PlanetAid v. City of St. John's. As the Sixth Circuit explained in PlanetAid, the court applied strict scrutiny in Abbott, as did the Supreme Court in Riley-Schomburg and Munson, and that same level of scrutiny is required here. This is consistent with the Supreme Court of Washington's unanimous opinion in State of Washington v. TBI. Third, strict scrutiny is also due because this law is content-based. The law and its ban apply only if the bins solicit and collect donations of clothing and household goods. Laws singling out certain kinds of donations are content-based. The city says it does not matter if the bins are white-labeled or have no message at all, but that is not true by the plain language of the ordinance itself. As in Reagan, a government cannot escape classification as content-based simply by swapping an obvious subject matter distinction, like charitable solicitation, for a function or purpose proxy, the solicitation and acceptance of donated clothing of household items. That achieves the same result. The government cannot do indirectly that which cannot be done directly, and that's Buckley v. Vallejo. The city does not apply these bans and burns to other public receptacles, soliciting election ballots, food for the poor, cash contributions, trash, or recycling, which, as noted in Discovery Network, have the same concerns as to overflow and the same aesthetic concerns. That was key to the Sixth Circuit's opinion in Planet Aid. Here, the city treats commercial speech conveyed on recycling receptacles more favorably than charitable solicitations made via donation bin. Trash and recycling receptacles are allowed in all zones without prohibitive setbacks. That isn't permissible under the First Amendment. I'd like to briefly touch on the map issue, and I think that was fairly well covered in the briefs. I do note my friend raises the map issue today and argues that this dispute revolved around the maps in this case, and that's inaccurate as demonstrated by the opinion itself. On page 10 of the opinion, the district court ruled that six independent aspects of the law failed intermediate scrutiny, and it considered the maps only in a passing footnote in regard to one of those provisions, the zoning restrictions. That's footnote 39 on page 10. The maps were immaterial to the court's holding as to the zoning restrictions. The court held the city failed to provide sufficient evidence for why a ban was necessary in any one zone, much less 11 of 20. Critically, the district court did not rely on the maps at all in granting the preliminary injunction based on the setback restrictions, the signage restrictions, the permitting restrictions, the consent restrictions, or the unbridled discretion. The maps are admittedly irrelevant to five of the reasons the district court found the law fails intermediate scrutiny. So the district court would have granted the preliminary injunction order even if there were no maps at all. Even looking at the city's own map, taking it as true, it shows that donation boxes are allowed only in a minute fraction of the city. It shows the same thing. It shows that donation bins are banned in most of Mansfield. Thus, it does not matter which map the district court cites in footnote 39 of the opinion. The dispute of the maps is immaterial to the district court's decision that six aspects of this law are facially unconstitutional. And if a dispute of fact is immaterial to the decision, no hearing is required. That's PCI transportation at 546. I'd like to point to one other relevant authority that I think articulates this issue quite well, and that's the ADT versus Capital Connect case. The Fifth Circuit there approved the resolution of a preliminary injunction without a hearing where the parties were given an opportunity to present their differing versions of underlying facts, and the district court determined that there were no disputes regarding the facts necessary to the resolution of the preliminary injunction. And that, the city concedes, is within the sound discretion of the trial court. In conclusion, the district court correctly found six aspects of the law facially unconstitutional, four of which were not even challenged by the city in this appeal. The preliminary injunction order of the lower court should be affirmed, but in affirming we respectfully request that strict scrutiny be ruled the correct standard of review in this case. Thank you, Your Honors. Thank you, Ms. Donnelly. Mr. Brandt, for a vote? Yes, Your Honor. The parties in this case don't agree on much, but they do agree on the fact that this appeal is not moot. What you heard Ms. Donnelly said there were six or so issues that were still alive. One of them she mentioned was permitting, and she said that there was a prior restraint. It's a live controversy that persists from the original ordinance to this ordinance, and is before the court, and it would not be appropriate in my mind, in my argument, that we have this dismissed as moot, because this is at the heart of what's going on here. The standing argument drives clearly from the permitting provision. The permitting provision says that operators must obtain a permit. The only thing we changed about the permitting effectively was... The main thing we changed about the permitting was to simply put explicitly what we thought was implicitly already there. We stated that the permit shall be issued if it meets these criteria. What we had before was criteria, and then those were the criteria to be used. We cleared that up so that now the permit shall be given to the operator if the criteria are met, the objective criteria, so there's no discretion at all. There was, but we made it clear. So it is not moot on that point, and that is what drives my standing argument, because we have now no clear showing by Arms of Hope that they are the operator. What they have instead is some arguments, not evidence. We're pointing to evidence from someone associated with Arms of Hope, the email from Kristen Green that says to the city, my client, Kristen Green's client, United Clothing Donation Services, or United Clothing, whatever the name of it is, the proper name, she says that's the operator, okay, and that makes sense, because what we can devise, although we haven't been able to get this developed in discovery enough, but what we can devise is that it is actually being operated by an entity, and that Arms of Hope has some sort of an agreement which they have refused to produce to us with that entity to share in the proceeds of the collections or the profit from the collections of their donations. Nevertheless, going to the very heart of why we needed regulation in the first place, because the history of donation bins was that they were being sort of anonymously dumped in places, and nobody could figure out whose they were and who was in charge here, so we established a permitting process, very simple. And it's not a prior restraint. It is simply a regulatory mechanism to gain some control over the secondary effects of these unattended donation bins. This goes into a long line of cases that deal with sexually oriented business, for example. Those secondary effects are that you're allowed to regulate sexually oriented businesses, even though they are First Amendment expression, because of the secondary effects of that type of business. Same with a donation bin. It has associated with it problems, and the way that we deal with those problems is we get someone to identify themselves as the operator, obtain a permit, and then if we have problems, if the city has problems, we go to the operator, and we say, hey, fix the problem, or recite them, or whatever we do. But that is clarity, and what you have here is somewhat of a shell game, it seems, about who's actually operating this thing. An injunction, an extraordinary injunctive relief that is given by the district court should not have been given when the operator is not before it. There has been absolutely no clear showing of a likelihood that Arms of Hope has established the standing to support the injunction as to the permitting requirement. That is why we're asking the court to reverse and render, or in the alternative, reverse and remand for development of the issue of standing to reverse on the overbreath and render on the overbreath because there are provisions that were never sought to be enjoined that were enjoined, and then to reverse and remand on the evidentiary issue so we can talk about the nitty-gritty of the maps and the evidence there to see if there's adequate locations. And I appreciate your time. Thank you, Mr. Brandt. Your case is under submission. Last case for today, Terrell v. Ball.